**SECURITIES–INTERMOUNTAIN, INC.,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 26148.

United States Court of Appeals,
Ninth Circuit.

May 16, 1972.

Michael L. Paup (argued), John W. DeBruyn, Thomas L. Stapleton, William S. Estabrook, III, Meyer Rothwacks, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Sidney I. Lezak, U. S. Atty., Jack C. Wong, Asst. U. S. Atty., Portland, Or., for appellant.

Duane Vergeer (argued), of Vergeer, Samuels, Roehr & Sweek, Portland, Or., for appellee.

Before DUNIWAY and CARTER, Circuit Judges, and MURRAY, District Judge.*

JAMES M. CARTER, Circuit Judge:

The United States appeals from the decision of the district court which allowed recovery to Securities-Intermountain (Securities), the plaintiff below, for federal income taxes paid for the years 1964, 1965, and 1966. The appeal raises the issue of whether a mortgage portfolio purchased by Securities is an asset which can be fully depreciated under § 167(a), Int.Rev.Code of 1954. We affirm, based on the finding of the district court that no part of the price paid constituted payment for property, tangible or intangible, other than the mortgage portfolio.

The basic facts are set out in the opinion of the court below:

"In 1963, plaintiff was operating a mortgage banking business with offices in Portland, Oregon, Palo Alto, California, and Spokane, Washington.

A substantial part of plaintiff's income was derived from the servicing of mortgages for the Aetna Life Insurance Company. Plaintiff desired to expand into the Seattle, Washington area, where Aetna's mortgages

---

* Honorable William D. Murray, Senior United States District Judge, District of Montana, sitting by designation.

were serviced by White & Bollard, a competing mortgage banker.

Plaintiff, with the approval of Aetna, purchased from White & Bollard the Aetna mortgage portfolio. The Seattle mortgages, having balances totaling $31,091,493.64, secured loans by Aetna to some 2456 property purchasers. Plaintiff paid to White & Bollard approximately $510,000 for the portfolio. By this purchase, plaintiff succeeded to White & Bollard's right to receive all income produced by servicing the outstanding mortgages making up the portfolio, and White & Bollard stopped servicing Aetna's mortgages in the Seattle area. White & Bollard, however, remained in the mortgage banking business in competition with plaintiff, and continued to service mortgages for other lenders.

. . . .

Upon acquiring the Seattle-Aetna portfolio, the plaintiff segregated those mortgages from its other mortgage portfolios for accounting purposes, and set up a depreciation schedule for the income potential of the Seattle portfolio based upon a life expectancy of eight years. . . ."

The trial court held that the entire purchase price was depreciable. The Government challenges this decision, arguing that a portion of the purchase price represents the right to do future business with Aetna. Since such portion would be an asset of indeterminable life, it could not be depreciated.

The Government's argument hinges on its interpretation of the transaction. By its view, the right to service mortgages and receive compensation assured the right to represent the investor, Aetna, in the future. Government witnesses testified that it is the practice in the

industry for the correspondent who takes over, to represent the investor in future mortgage agreements.

The record, however, contains other evidence on which the trial court was entitled to rely. White & Bollard's contract for the representation of Aetna was not assignable. The right to represent Aetna was terminable at Aetna's will. Taxpayer understood this. Securities was in contact with Aetna and prior to the White & Bollard transaction, Aetna agreed that Securities could represent Aetna in the Seattle area. Taxpayer, prior to the transaction, had a long and successful business relationship with Aetna and had acquired the right to represent Aetna in Portland. Aetna was very pleased to have Securities handle its Seattle account. The trial court found that Securities, by its purchase, secured no more than the right to receive income produced by servicing the outstanding mortgages in the portfolio.

The Government urges us to hold that there was a sale of "good will," as that term was defined by this court in Grace Bros. v. Commissioner of Internal Revenue (9 Cir. 1949), 173 F.2d 170, 175–176. "Good will," of course, is not depreciable. Dodge Bros. v. United States (4 Cir. 1941), 118 F.2d 95, 100. But there was no sale of "good will." The trial court found that all that was sold was the right to receive income produced by servicing the mortgages in the portfolio. White & Bollard's right to represent Aetna was not salable and was not sold, and taxpayer had no need to buy it. We cannot say the trial court's findings were clearly wrong.[1]

The Government also invites us to consider whether the taxpayer's expenses in acquiring new mortgages must be capitalized and amortized over the life

[1] The cases cited by the Government are clearly distinguishable on their facts. See Bisbee-Baldwin Corp. v. Tomlinson (5 Cir. 1963), 320 F.2d 929; Western Mortgage Corp. v. United States (C.D.Cal. 1969), 308 F.Supp. 333; Bankers Guarantee Title & Trust Co. v. United States (N.D.Ohio 1968), 290 F.Supp. 522, aff'd (6 Cir.) 418 F.2d 1084. In each of these cases the court relied on something more than a transfer of a bare-bones portfolio. Each found evidence of a sale of "good will." None involved a purchaser who had made a pre-transaction servicing agreement with the investor.

of the loans. The issue was inserted belatedly by amendment into the pretrial order. No evidence was offered specifically in support of the issue nor were any computations made. After the trial court's opinion was filed, which served as findings of fact and conclusions of law, no effort was made by the Government to propose new or modified findings of fact or form of judgment which would have called the matter to the attention of the trial court or have made a record for review on the appeal. Appellant calls our attention only to a reference to the problem in a pretrial memorandum of about February 1970, prior to the trial in July 1970. We hold that the Government abandoned the issue and we do not reach it here.

The judgment is affirmed.